UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROMEIN ROSTAMI,<br><br>Plaintiff,<br><br>v.<br><br>HYPERNET INC., et al.,<br><br>Defendants. | Case No. 22-cv-01813-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING AS MOOT PLAINTIFF'S ADMINISTRATIVE MOTION TO STRIKE STATEMENT OF RECENT DECISION**<br><br>Re: ECF Nos. 36, 40, 64 |

Plaintiff Romein Rostami ("Plaintiff") brings this action against Hypernet Inc. ("Hypernet"), Hypernet Labs Inc. ("HLI"), Ivan Ravlich, Daniel Maren, and Todd Chapman (with Ravlich and Maren, the "Individual Defendants," and collectively with Hypernet and HLI, "Defendants"), asserting claims for fraudulent inducement, unjust enrichment, breach of the implied covenant of good faith and fair dealing, civil conspiracy, and alter ego liability. ECF No. 1 ("Compl."). Pending before the Court are (1) Hypernet's Motion to Dismiss or, in the Alternative, to Compel Arbitration; (2) HLI and the Individual Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration (with Hypernet's Motion, the "Motions"); and (3) Plaintiff's Administrative Motion to Strike Defendants' Unauthorized Statement of Recent Decision. ECF Nos. 36 ("Hypernet Mot."), 40 ("HLI/ID Mot."), 64. The Court finds the pending motions appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons discussed below, the Court GRANTS the Motions without leave to amend, DENIES AS MOOT the Administrative Motion, and dismisses the action without prejudice.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
1

## I. BACKGROUND

At the pleading stage, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1222 (9th Cir. 2011) (accepting facts alleged in complaint as true in evaluating motion to dismiss for *forum non conveniens*); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011) (accepting facts as true in determining motion to dismiss under for failure to state a claim). The following facts derive from the allegations in the Complaint.[1]

Defendant Hypernet is a start-up technology company that described its business plan as the creation of a computing network—the "Hypernet Protocol" or "Hypernet Platform"—capable of providing "true parallel computing" as a public resource via a decentralized platform that would connect buyers and sellers of computing power. Compl. ¶¶ 2–3, 35. Hypernet was incorporated in the Cook Islands, with its headquarters and principal place of business in Palo Alto, California. *Id.* ¶¶ 7(i), 11; Ex. A at 2.[2] The Cook Islands Ministry of Justice does not have a record of the formation or current registration of Hypernet. Compl. ¶ 12. HLI is a Delaware corporation, with its headquarters and principal place of business in Palo Alto, California. *Id.* ¶ 13. Ravlich, Maren, and Chapman all reside in California and serve or served as, respectively, HLI's chief executive, financial, and technical officers. *Id.* ¶¶ 14–16. The Individual Defendants are also alleged to be co-controllers and co-principals of Hypernet. *Id.*

In the summer of 2018, Hypernet offered for purchase the future right to as-yet-undeveloped cryptocurrency tokens ("Hyper Tokens") to fund the development of the Hypernet Platform. Compl. ¶¶ 3, 22. In general, cryptocurrency tokens, or coins, are virtual products that may entitle holders to certain rights related to an underlying venture, such as rights to profits, share of assets, rights to use certain services provided by the issuer, and voting rights. *Id.* ¶ 23.

---

[1] The Court also considers the two Future Token Interest Subscription Agreements attached to the Complaint as Exhibit A. ECF No. 1-1 ("Ex. A"); *see* Compl. ¶ 28; *Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 852 (N.D. Cal. 2017) (citations omitted) (documents appended to the complaint may be considered along with the complaint on a motion to dismiss).

[2] All page citations to Exhibit A use ECF numbering rather than internal pagination due to the duplication of page numbers within the exhibit.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
2

Additionally, there exist online markets where holders can exchange cryptocurrency tokens for fiat currencies (*e.g.*, U.S. dollars) or other virtual currencies. *Id.* Hypernet's Hyper Tokens were to be the currency for purchasing computing power on the Hypernet Platform and a vehicle entitling holders to vote on upgrades or changes to the Hypernet Protocol. *Id.* ¶¶ 29, 35.

Hypernet sold future rights to Hyper Tokens in exchange for U.S. dollars, Bitcoin or Ethereum, of which the latter two are virtual currencies. Compl. ¶¶ 19, 25. The vehicles for these sales were purchase agreements referred to as Future Token Interest Subscription Agreements ("TSAs"). *Id.* ¶ 25. On July 25, 2018, Plaintiff—a U.S. citizen residing in Puerto Rico—entered into two separate TSAs with Hypernet. *Id.* ¶¶ 10, 28; *see* Ex. A. at 2–57, 58–113. The sale price under the first TSA was $84,346 U.S. dollars, and the price under the second TSA was $254,902. Ex. A at 57, 113. Plaintiff paid the total of $339,248 by transferring 728 Ethereum cryptocurrency tokens to Hypernet. *Id.* at 55–57, 111–113; Compl. ¶ 4. The TSAs, including the Confidential Interest Statement accompanying each agreement, stated the following: "The Hypernet may not be successfully developed or launched and Purchasers may not receive tokens"; "It is possible that the Tokens and the Hypernet may never be launched and there may never be an operational Token;" and "Purchasers should be aware that they will be required to bear the financial risks of this purchase for an indefinite period of time." Ex. A. at 4, 16, 60, 72. The TSAs also each contained a clause providing:

> All rights and obligations hereunder will be governed by the laws of the Cook Islands, without regard to the conflicts of law provisions of such jurisdiction. The Purchaser hereby irrevocably agrees that all actions arising directly or indirectly as a result or in consequence of this TSA of the Tokens shall be instituted and litigated only in courts having situs in the Cook Islands and the Purchaser hereby consents to the exclusive jurisdiction and venue of any court of competent jurisdiction in the Cook Islands. The Purchaser hereby waives any objection based on *forum non conveniens*, and the Purchaser hereby waives personal service of any and all process.

*Id.* 52–53, 108–109. In total, investors paid about $20 million worth of U.S. dollars to fund Hypernet and purchase future rights to Hyper Tokens. Compl. ¶¶ 4, 27, 53.

On March 22, 2022, Plaintiff filed this action seeking the return of 728 Ethereum

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
3

1   cryptocurrency tokens, alleging that Defendants never intended to produce a viable platform or the

2   Hyper Token. *Id.* ¶¶ 1, 27. As of the filing of the Complaint, the Hypernet Platform had not been

3   created and no Hyper Tokens had been issued. *Id.* ¶ 47.

4         On January 10, 2023, Defendants filed a statement of recent decision in support of their

5   Motions and submitted a copy of an order in *Rostami v. Open Props, Inc.*, S.D.N.Y. No. 1:22-cv-

6   03326-RA. ECF Nos. 63, 63-1. On January 20, 2023, Plaintiff filed an administrative motion to

7   strike the statement of recent decision as improper under Civil L.R. 7-3. ECF No. 64.

**II.    LEGAL STANDARD**

     **A.    Forum Selection Clause**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co., Inc. v. U.S. D. for W.D. of Tex.*, 571 U.S. 49, 60 (2013). The Supreme Court further held in *Atlantic Marine* that "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum" under 28 U.S.C. § 1404(a). *Id.* at 61. Under that analysis, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 62); *see also Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) ("A court should refuse to enforce a forum-selection clause 'only under extraordinary circumstances unrelated to the convenience of the parties.'") (citation omitted). The threshold step of the analysis is therefore to determine the validity of the forum selection clause at issue. *See Atl. Marine*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").

"[T]he Supreme Court did not answer [in *Atlantic Marine*] whether state or federal law governs the validity of a forum-selection clause." *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F. 4th 956, 963 n.4 (9th Cir. 2022). Although the Ninth Circuit has held that there are circumstances under which state law governs the threshold question of validity, such as

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
4

where a state statute voids the forum selection clause at issue, *id.* at 964, it has repeatedly held both before and after *Atlantic Marine* that federal law governs the validity of forum selection clauses. *See, e.g.*, *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1164 (9th Cir. 2020) ("The validity of a forum-selection clause is governed by federal law.") (citation omitted); *Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 867 (9th Cir. 1991) ("Federal law governs the validity of a forum selection clause."); (*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990) (same). Further, the *DePuy* court expressly reserved the question of whether state law would govern the validity of a forum selection clause that had not been voided. 28 F. 4th at 964 n.6. Because there are no circumstances here that are similar to the state labor statute voiding the forum selection clause in *DePuy*,[3] and in light of the remaining Ninth Circuit authority on the issue, the Court will apply federal law to the question of validity of the forum selection clause.[4]

Under federal law, "[f]orum selection clauses are *prima facie* valid." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972); *see also In re Becker*, 993 F.3d 731, 732 (9th Cir. 2021) ("Forum selection clauses are valid except in the rarest cases.") (citation omitted). A party challenging the validity of a forum selection clause "bears a 'heavy burden of proof'" and must show that the clause was invalid for such reasons as fraud or overreaching. *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835 (N.D. Cal. 2018) (quoting *M/S Bremen*, 407 U.S. at 15); *Sun*, 901 F.3d at 1088.

Once the court determines there exists a valid forum selection clause, "'[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Sun*, 901 F.3d at 1088 (citation omitted). The interpretation and enforcement of a forum selection clause is governed by federal law. *See DePuy*,

---

[3] Plaintiff argues that the forum selection clause is subject to Cal. Civ. Code § 1670.5(a), which permits a court to refuse to *enforce* an unconscionable clause. *See* Hypernet Opp. at 8. The statute does not void any clause or contract. *See* Cal. Civ. Code § 1670.5(a).
[4] As described below, an evaluation of state law occurs in the second step of the *forum non conveniens* analysis.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
5

28 F. 4th at 965; *Manetti-Farrow, Inc.*, 858 F.2d at 513. Courts will enforce forum selection clauses unless a plaintiff "clearly show[s] that enforcement would be unreasonable and unjust." *Adema Techs.*, 657 F. App'x at 663 (quoting *M/S Bremen*, 407 U.S. at 15). In determining whether enforcement is unreasonable or unjust, courts look to the factors identified in *M/S Bremen*, including whether enforcement would contravene a strong public policy of the forum in which the suit is brought (whether declared by statute or judicial decision), or if enforcement would effectively deprive the plaintiff of her day in court. *See id.*; *Sun*, 901 F.3d at 1088.[5] The court may also consider the public interest factors of the traditional *forum non conveniens* analysis where no forum selection clause is present, which may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6, 64. However, these factors "will rarely defeat" enforcement. *Id.* at 64.

### B. Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is

---

[5] *M/S Bremen*, which was decided in 1972 and therefore well before *Atlantic Marine*, also held that enforcement is unreasonable and unjust if the forum selection clause is invalid due to fraud or overreaching. 407 U.S. at 15. Many courts analyze validity and enforcement together and therefore include all three *M/S Bremen* factors in the enforcement analysis. *See, e.g.*, *Huddleston v. John Christner Trucking, LLC*, 2017 WL 4310348, at *7 (E.D. Cal. Sept. 28, 2017); *In re CytRx Corp. S'holder Derivative Litig.*, 2015 WL 9871275, at *2 (C.D. Cal. Oct. 30, 2015). In light of the Ninth Circuit's recent distinction between the validity and enforceability analyses of forum selection clauses, *see DePuy*, 28 F. 4th at 963–65, the Court finds it appropriate to evaluate *M/S Breman*'s validity factor within the threshold validity analysis and to retain the remaining two factors for the enforceability analysis.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
6

liable for the misconduct alleged." *Id.* The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). In evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

Defendants seek dismissal of this action on three grounds. First, they argue that the entire action is governed by a mandatory forum selection clause in the TSAs requiring disputes be litigated in the Cook Islands. Hypernet Mot. at 1; HLI/ID Mot. at 1. Second, Defendants assert that the Court should compel arbitration pursuant to a mandatory arbitration clause in the TSAs and dismiss or stay the action pending arbitration. *Id.* And third, Defendants move to dismiss the complaint for failure to state a claim. *Id.* Before evaluating Defendants' arguments for dismissal, the Court addresses Defendants' requests for judicial notice.

### A. Request for Judicial Notice

A court generally may not consider any material beyond the pleadings when ruling on a motion to dismiss. However, documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint. *Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 852 (N.D. Cal. 2017) (citations omitted). Defendants each request that the Court take judicial notice of a Cook Islands Certificate of Current Status issued to Hypernet. ECF Nos. 39, 42. Plaintiff does not oppose the requests. *See* ECF Nos. 46 ("Hypernet Opp."), 47 ("HLI/ID Opp."). "[A] court may take judicial notice of public records of

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
7

governmental entities and authoritative sources of foreign law." *Color Switch LLC v. Fortafy Games, DMCC*, 377 F. Supp. 3d 1075, 1089 n.6 (E.D. Cal. 2019) (quoting *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *2 n.1 (N.D. Cal. Nov. 15, 2013)). Accordingly, the Court grants Defendants' requests and will take judicial notice of Hypernet's Certificate of Current Status, as certified on May 20, 2022, by the Registrar of International and Foreign Companies. According to that Certificate, Hypernet was incorporated in the Cook Islands on March 6, 2018, with a registration that, as of the date of certification, was set to expire on March 5, 2023. ECF No. 37, Ex. 1; ECF No. 41, Ex. 1.

### B.     Forum Selection Clause

Defendants first move to dismiss this action under Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and the doctrine of *forum non conveniens* for improper venue based upon a mandatory forum selection clause contained in the two TSAs signed by Plaintiff. Hypernet Mot. at 1, 3, 7.[6] As noted above, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. A forum selection clause "does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Id.* at 59; *see also Aimsley Enterps. Inc. v. Merryman*, 2020 WL 1677330, at *4 n.11 (N.D. Cal. Apr. 6, 2020) ("Settling a split of authority, the Supreme Court's 2013 decision in *Atlantic Marine* determined that, where a party asserts venue is improper due to a [federal] forum selection agreement, the appropriate procedural mechanism is a motion under section 1404(a), rather than a motion to dismiss pursuant to Rule 12(b)(3)."). The Court therefore DENIES Defendants' Motions to the extent they are brought under Rule 12(b)(3) or § 1406(a) and will evaluate the argument only under the *forum non*

---

[6] HLI and the Individual Defendants have joined in Hypernet's *forum non conveniens* arguments. HLI/ID Mot. at 1, 7–8; ECF No. 45 (HLI and Individual Defendants' Joinder in Hypernet Mot.). Although Hypernet is the only Defendant who is a signatory to the TSAs, non-signatory defendants may still move to enforce a forum selection clause where, as here, "the alleged conduct of the nonparties is closely related to the contractual relationship." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (citation omitted). The Court will therefore cite only to the Hypernet Motion in discussing all Defendants' forum arguments.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
8

1  *conveniens* doctrine.

2          **1.**      **Validity**

3  Each of the two TSAs signed by Plaintiff contained a forum selection clause providing:

> All rights and obligations hereunder will be governed by the laws of the Cook Islands, without regard to the conflicts of law provisions of such jurisdiction. The Purchaser hereby irrevocably agrees that all actions arising directly or indirectly as a result or in consequence of this TSA of the Tokens shall be instituted and litigated only in courts having situs in the Cook Islands and the Purchaser hereby consents to the exclusive jurisdiction and venue of any court of competent jurisdiction in the Cook Islands. The Purchaser hereby waives any objection based on *forum non conveniens* . . . .

Ex. A at 52–53, 108–109. Defendants argue that Plaintiff's claims are squarely encompassed by the forum selection clause because the "all implicate performance under the TSA and the delivery of HyperTokens" and therefore "arise 'directly or indirectly as a result or in consequence of this TSA or the Tokens.'" Mot. at 8 (quoting Ex. A at 52, 108). Plaintiff does not dispute that the forum selection clause, if valid and enforceable, would encompass all claims in this action. *See* Hypernet Opp.; HLI/ID Opp. Plaintiff alleges in the Complaint that "Defendants failed to produce any viable product, good, or service," and that "[a]s a result of Defendants' wrongful conduct, Plaintiff has suffered damages and brings this action . . . ." Compl. ¶ 9. The Court accordingly finds that each of Plaintiff's claims arise out of Defendants' alleged failure to create Hyper Tokens that could be spent on a Hyper Platform. Because the claims "tend to implicate issues related to or covered by the contract," the forum selection clause encompasses each of Plaintiff's claims. *See Medina v. OANDA Corp.*, 2017 WL 1159572, at *10 (N.D. Cal. Mar. 29, 2017).

     The forum selection clause is presumptively valid, and Plaintiff bears the "heavy burden" of proof needed to show that the clause is invalid for such reasons as fraud or overreaching. *Ponomarenko*, 287 F. Supp. 3d at 835 (citing *M/S Bremen*, 407 U.S. at 15). Plaintiff argues that the forum selection clause is not valid because it was not reasonably communicated to him, such that its incorporation into the contract was the result of "overweening bargaining power."

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
9

Hypernet Opp. at 6–8.[7]  Specifically, Plaintiff argues that the provision was "buried in fine print under a section titled 'Miscellaneous' on page 51 of a 56-page Adobe pdf document with complicated language"; the TSAs were "initially provided to Plaintiff via email in a take it or leave it fashion by sending a website link to access DocuSign, an electronic signature platform"; Defendants did not provide Plaintiff the TSAs prior to sending the DocuSign link; Plaintiff was not "specifically informed regarding the existence of a need to seek redress in the Cook Islands" and had the expectation that disputes would be held in California; and Plaintiff "did not have the ability to negotiate any amendments or changes to the TSAs" and did not "sign or initial the page containing the forum selection provision." Hypernet Opp. at 7–8.  Based on these assertions, Plaintiff contends that he was not meaningfully informed of the existence of the forum selection clause and had no ability to reject its terms. *Id.*

The Court disagrees.  It notes that Plaintiff, by agreeing to the TSAs, represented that he was an accredited investor, meaning a "natural person whose individual net worth . . . exceeds $1,000,000 [or] who had an individual income in excess of $200,000 in each of the two most recent years . . . and has a reasonable expectation of reaching the same income level in the current year." Ex. A at 46–47, 102–104.  Such a representation belies a conclusion that Plaintiff is an unsophisticated investor who would assume that any dispute would be addressed in California. *See, e.g.*, *Goldsmith v. Levenstein*, 2015 WL 12670168, at *7 (C.D. Cal. May 15, 2015) ("An 'accredited investor' is anyone who may be considered 'a sophisticated or resourceful investor who has the wherewithal to invest and is knowledgeable about the market and security he invests in.'") (citation omitted); *Lockhart v. General Motors Corp.*, 2001 WL 1262922, at *3 ("It is difficult to imagine that plaintiff, a sophisticated businessman . . . could have actually read the agreement and not understood its import.").  However, the Court will take as true Plaintiff's subjective expectation that disputes would be held in California.

---

[7] Plaintiff's opposition to the HLI/ID Motion is essentially identical with respect to his forum selection arguments. *See* Hypernet Opp. at 5–13; HLI/ID Opp. at 6–14.  The Court will cite only to Plaintiff's Hypernet Opp. to refer to all of Plaintiff's forum arguments.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
10

   Plaintiff cites only to one case, *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827 (9th Cir. 2002), in support of his argument about a lack of reasonable communication. The "reasonable communicativeness" test is generally used to determine "under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." 306 F.3d at 835; *see also Holck v. Bank of N.Y. Mellon Corp.*, 769 F. Supp. 2d 1240, 1250 (D. Haw. 2011) ("[T]he reasonable communicativeness test . . . has not been extended to the traditional *Bremen* analysis."). Even assuming a requirement that a forum selection clause be reasonably communicated, that standard is "easily met" here by the "unambiguous" forum selection clause here, which is "set in the same size font as the remainder" of the TSA and "plainly indicates" that the Cook Islands is the designated forum. *Holck*, 769 F. Supp. 2d at 1250. Courts in this district have specifically held that there is nothing impermissible about placing a forum selection clause under a "Miscellaneous" heading. *See Starlight Co., Inc. v. Arlington Plastics Machinery, Inc.*, 2001 WL 677908, at *3 (N.D. Cal. June 8, 2001). Further, a forum selection clause is "reasonably communicated" to a plaintiff where it is part of a contract that is transmitted and accepted electronically by checking a box, even if the user would have had to open a separate link to view the terms. *Lentini v. Kelly Servs., Inc.*, 2017 WL 4354910, at *2 (N.D. Cal. Oct. 2, 2017) (citing *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. April 11, 2014)).

   Accordingly, the Court finds that the Plaintiff has not met his "heavy burden" of showing that the forum selection clause in the TSAs is invalid due to the fraud, overreaching, or overweening bargaining power.

     **2. Enforceability**

   The "practical result [of *Atlantic Marine*] is that a forum selection clause 'should control except in unusual cases.'" *Sun*, 901 F.3d at 1088 (quoting *Atl. Marine*, 571 U.S. at 64). In evaluating whether the present facts fall into such an "unusual case[,]" the Court will evaluate the remaining *M/S Bremen* factors—*i.e.*, whether enforcement would contravene a strong public policy of the forum in which the suit is brought or effectively deprive the plaintiff of her day in court—and the public interests traditionally evaluated in a *forum non conveniens* analysis,

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
11

1   including the administrative difficulties flowing from court congestion, the local interest in having

2   a localized controversy decided at home; and the interest in having the trial of a diversity case in a

3   forum that is at home with the law. *See id.*; *Atl. Marine*, 571 U.S. at 62 n.6 & 64.

### a. Contravention of Strong Public Policy

Plaintiff argues that enforcement of the forum selection provision would contravene California's strong public policy, as declared by Cal. Civil Code § 1670.5(a) and the state's judicial decisions, against the enforcement of unconscionable contract provisions. Hypernet Opp. at 8. "[U]nconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)). Under California law, a contract or clause must be both procedurally and substantively unconscionable before a court may refuse to enforce it as unconscionable. *Mohamed*, 848 F.3d at 1210 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)) (internal quotation marks omitted). However, the more substantively oppressive a contract term, the less procedurally unconscionable it must be to be deemed unenforceable, and vice versa. *Baltazar*, 62 Cal. 4th at 1243–44 (citation omitted).

### i. Procedural Unconscionability

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.'" *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 307 (2022) (quoting *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019)). Should a contract be found to be adhesive, "[t]he pertinent question . . . is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *Id.* (citation omitted). Plaintiff argues that the forum selection clause in the TSAs is procedurally unconscionable because (1) he did not have the "ability to negotiate or reject its terms"; (2) the language of the provision is "confusing and conflicting," resulting in insufficient notice and therefore surprise; and (3) the provision was located in a section titled "Miscellaneous" just a few pages from the end of a 56-page document that was "sent to Plaintiff for electronic signature by

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
12

checking a box." Hypernet Opp. at 8–9. Plaintiff additionally contends that an accredited party or a sophisticated businessperson may still be subject to procedural unconscionability. *Id.* at 9–10.

Defendants do not dispute Plaintiff's argument that the TSAs were adhesive contracts. *See* ECF No. 49 ("Hypernet Reply") at 5; ECF No. 52 (HLI and Individual Defendants' Joinder in Hypernet Reply).[8] However, that a contract is one of adhesion does not alone make it unconscionable. "California appellate courts have implemented this broader policy [approving forum selection clauses] and enforced forum selection clauses in adhesion contracts," particularly "in a non-arbitration context." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016); *see, e.g.*, *Intershop Commc'ns v. Super. Ct.*, 104 Cal. App. 4th 191, 201 (2002) (holding forum selection clause requiring disputes be litigated in Germany enforceable in adhesive employment contract). The sole case to which Plaintiff cites for his argument that a contract of adhesion by itself implicates procedural unconscionability, was—like several other cases that have held similarly—decided with respect to an arbitration provision. *See Milliner v. Bock Evans Fin. Counsel, Ltd.*, 114 F. Supp. 3d 871, 878 (N.D. Cal. 2015); *see also, e.g.*, *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784 (9th Cir. 2002) (finding procedurally unconscionable a non-negotiable arbitration agreement). The Ninth Circuit reasoned in *Tompkins* that should the standards for evaluation of arbitration and non-arbitration provisions be unified, as required by the California Supreme Court, finding all contracts of adhesion to be procedurally unconscionable "would clearly contravene California's general policy preference for the enforcement of forum selection clauses." 840 F.3d at 1029.

Plaintiff's other arguments similarly do not show circumstances arising to the level of procedural unconscionability. The Court finds that the forum selection clause and the arbitration provision in the TSAs are not conflicting and confusing. Here, the arbitration clause provides that "any and all *claims* arising out of or related to the TSA" are subject to binding arbitration and that "[a]ny *claim* or *dispute* arising under [the] TSA" will be arbitrated individually, while the forum

---

[8] As with the Hypernet Mot. and Hypernet Opp., the Court will cite only to the Hypernet Reply because it encompasses all Defendants' arguments regarding venue.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
13

selection clause provides that "all *actions* arising directly or indirectly [under] the TSA . . . shall be instituted and litigated only . . . in the Cook Islands." Ex. A at 52–53, 108–109 (emphases added). These clauses are not inconsistent; a claim or dispute is separate from an action that is instituted in a court. Under the TSAs, then, any dispute is subject to mandatory binding arbitration, but should a court action become necessary—*e.g.*, to enforce an arbitration award—such a suit is to be brought in the Cook Islands. *See PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *12–*13 (N.D. Cal. June 7, 2012) (reading two forum selection clauses together and finding that one clause required litigation in a California state court and the other required litigation in Santa Clara County, so that litigation was not proper in federal district court); Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

        Nor do the "placement and form" of the forum selection clauses create a measure of procedurally unconscionable. Hypernet Opp. at 9. Unlike the clauses in the cases cited by Plaintiff, the forum selection clauses here were printed in the same, regularly-sized font as the rest of the TSAs. *See* Ex. A at 52–53, 108–109; *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1146 (2012) (unconscionable agreement was at end of single-spaced text in small typeface); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003) (unconscionable clause was printed in eight-point typeface). Thus, "[e]ven if [Plaintiff] was somehow not aware of the clause when signing the agreement, it was stated in clear and unambiguous language and not hidden in fine print." *East Bay Women's Health, Inc. v. gloStream, Inc.*, 2014 WL 1618382, at *4 (N.D. Cal. Apr. 21, 2014); *Intershop Commc'ns*, 104 Cal. App. 4th at 202 ("[T]he forum selection clause plainly says that Hamburg, Germany is the selected forum. Plaintiff had full notice that he was agreeing to Hamburg as the place of trial, even though he may have chosen not to read the four-page contract."). That the clause was under a "Miscellaneous" heading does not render it "fundamentally unfair or unenforceable." *Id.* (rejecting argument that forum selection clause was procedurally unconscionable because it "appeared under the heading 'GENERAL,' as opposed to 'GOVERNING LAW' or 'VENUE,'") (citation omitted); *see also Starlight Co., Inc.*, 2001 WL

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
14

1  677908, at *3 (forum selection clause under "MISCELLANEOUS" heading was not improper).
2  And as explained above, the length of the TSA and Plaintiff's acceptance of the contract by
3  clicking a box do not implicate concerns about fairness. *Supra*, at Section III.B.1.

4  For the above reasons, the Court finds that Plaintiff has not made a showing of procedural
5  unconscionability. If any degree of surprise exists from Plaintiff's alleged expectation that
6  disputes would be resolved in California, *see* Hypernet Opp. at 7, that expectation was not well
7  supported by the circumstances and any procedural unconscionability would be minimal.

### ii.   Substantive Unconscionability

9  With a showing of procedural unconscionability that is minimal at best, Plaintiff must
10 make a very strong showing of substantive unconscionability. *See Baltazar*, 62 Cal. 4th at 1243–
11 44 (citation omitted). "Substantive unconscionability pertains to the fairness of an agreement's
12 actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum
13 Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 346 (2012). Plaintiff's
14 argument on this point—which he does not support with any citation to case law—is in essence
15 that the sole purpose of the forum selection clause here is to "erect an unconscionable barrier to
16 relief for non-drafting parties such as Plaintiff" by "requir[ing] Plaintiff to seek any disputes in a
17 distant forum thousands of miles away." Hypernet Opp. at 10. However, "[i]nconvenience and
18 additional expense are not sufficient [to demonstrate substantive unconscionability], unless
19 proceeding in the selected forum will be 'so gravely difficult and inconvenient that [a plaintiff]
20 will for all practical purposes be deprived of [his] day in court.'" *Capili v. Finish Line, Inc.*, 699
21 F. App'x 620, 622 (9th Cir. 2017) (quoting *Tompkins*, 840 F.3d at 1029–30); *see Intershop
22 Commc'ns*, 104 Cal. App. 4th at 202 (enforcing contract with selected forum in Hamburg,
23 Germany). As in *Capili*, Plaintiff has not provided sufficient (or any) details of such a hardship,
24 and therefore has not shown that the selected forum was "unavailable or unable to accomplish
25 substantial justice." *Id.*; *see* Compl.; Hypernet Opp.

26 The Court therefore finds that Plaintiff has not demonstrated substantive unconscionability
27 at all, and certainly not at the strength needed to balance the minimal or no procedural

28 Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
15

1  unconscionability. Accordingly, the forum selection clause does not contravene California's
2  public policy against enforcing unconscionable contracts.

### b.     Deprivation of Day in Court

As discussed above, Plaintiff has made no showing that he will be deprived of his day in Court. *See* Hypernet Opp. The Court will not refuse to enforce the forum selection clause based on this consideration.

### c.     Court Congestion

The Court now evaluates the three public interest factors commonly weighed in the *forum non conveniens* analysis, although it recognizes that these factors "will rarely defeat" enforcement of a valid forum selection clause. *Atl. Marine*, 571 U.S. at 62 n.6, 64. The first public interest factor of court congestion is neutral, as the parties have not made any arguments with respect to the relative congestion of courts in the Northern District of California and courts in the Cook Islands. This district is a busy forum, with 648 pending civil actions per judgeship as of December 31, 2022,[9] but even if one assumed that either forum was more congested than the other, "[t]he relative congestion of the courts in each district is not especially important." *Franey v. Am. Battery Sols. Inc.*, 2022 WL 4280638, at *15 (N.D. Cal. Sept. 15, 2022).

### d.     Local Interest in the Litigation

Under the second public interest factor, the Court considers whether California has a meaningful interest in this litigation. *Boston Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009). Plaintiff argues that California has an interest in unlawful activity that has occurred within its borders, and that although Hypernet may be a Cook Islands company, its "founders, principals, employees, offices, and contractors (and a portion of their scammed investors) are within California." Hypernet Opp. at 11. The Court notes that Plaintiff himself is a resident of Puerto Rico. Compl. ¶ 10. Nonetheless, given that the Individual Defendants reside in

---

[9] *See* Table N/A—U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics (December 31, 2022), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf.

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
16

California, *id.* ¶¶ 14–16, and that Plaintiff alleges that he relied in part on their statements about the Hypernet Platform and Hyper Tokens, *id.* ¶ 48, it is likely that some of the allegedly unlawful conduct at issue in this action took place in California. *See Russell v. De Los Suenos*, 2014 WL 1028882, at *4–*5 (S.D. Cal. Mar. 17, 2014). The Court therefore finds that California has some interest in this action. *See id.* (finding California had interest in action where "founders, principals, and sales agent" of Mexican company resided in California and were accused of "unlawful activities which likely took place, in part, in California). California does not, however, have a special interest in Plaintiff that would increase the weight of this factor, as Plaintiff is not a California resident. *Id.*

### e.     Forum at Home with the Law

The TSAs include a choice-of-law clause in the same paragraph as the forum selection clause that provides that Cook Islands law governs the agreements. Ex. A. at 52, 108. A Cook Islands court would undoubtedly be more at home with Cook Islands law than this Court.

Plaintiff argues that the choice-of-law clause is unenforceable because it is procedurally and substantively unconscionable for the same reasons as the forum selection clause. Hypernet Opp. at 11–13. As discussed above, the Court holds that the TSAs were not procedurally unconscionable, and Plaintiff has not shown why the substantive unconscionability of the choice-of-law clause would differ from the forum selection clause. *See supra*, at Section III.B.2.a.i–ii.

Plaintiff also argues that even if the Cook Islands choice-of-law clause is enforceable, California's conflict of law principles require that California law be applied. *See* Hypernet Opp. at 12–13. Plaintiff's argument rests on his contentions that "neither the parties nor the transaction have any substantial relationship to the Cook Islands" and that "there is no reasonable basis to apply Cook Islands law as all Defendants are based in California." *Id.* However, the TSAs repeatedly state that Hypernet is a Cook Islands company and therefore required to comply with Cook Islands law with respect to the creation and distribution of Hyper Tokens. *Compare* Hypernet Opp. at 13, *with* Ex. A at, *e.g.*, 2, 17, 58, 73.

The Court need not engage in a full choice of law analysis, however, because it finds that

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
17

dismissal would be appropriate even if California law would apply. The parties agreed to a valid forum selection clause that Plaintiff has not shown would contravene strong California public policy or deprive him of his day in court. Even if California has some interest in this litigation—which the Court weighs more lightly given Plaintiff's non-California residency—and California law were to apply, this is not a "rare" case where public interest factors are so strongly in favor of retaining an action that they defeat enforcement of a valid forum selection clauses. *See Atl. Marine*, 571 U.S. at 64; *Russell*, 2014 WL 1028882, at \*5. Accordingly, the Court finds that the forum selection clause is enforceable, and dismissal is proper. *See Aimsley Enterps. Inc.*, 2020 WL 1677330, at \*5 ("When enforcement of a forum selection clause calls for venue in a foreign court, as here, dismissal is appropriate.").

### C. Arbitration

Hypernet argues in the alternative that the Court should compel Plaintiff to arbitrate his claims pursuant to the arbitration provision in the TSAs, and the HLI and the Individual Defendants join that argument and move to join any arbitration proceeding. Hypernet Mot. at 11–15; HLI/ID Mot. at 23–25. Because the Court finds that the Cook Islands forum selection clause is valid and enforceable, it need not and does not reach this argument.

### D. Failure to State a Claim

Defendants additionally argue that the Court should dismiss this action for failure to state a claim. Hypernet Mot. at 15–25; HLI/ID Mot. at 8–23. The Court also does not reach this argument in light of its holding on the validity and enforceability of the forum selection clause.

### E. Plaintiff's Administrative Motion

Because the recent decision in *Rostami v. Open Props, Inc.*, S.D.N.Y. No. 1:22-cv-03326-RA, submitted by Defendants on January 10, 2023, was irrelevant to the Court's analysis of the dispositive issue posed by the forum selection clause in this action, the Court DENIES AS MOOT Plaintiff's administrative motion to strike the statement of recent decision.

## IV. CONCLUSION

Based on the foregoing, the Court holds that all of Plaintiff's claims are encompassed by a

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
18

valid and enforceable forum selection clause requiring that any action arising out of Plaintiff's purchase of future rights to Hyper Tokens be brought in the Cook Islands.  The Court therefore GRANTS Defendants' Motions to Dismiss under the doctrine of *forum non conveniens* and DENIES AS MOOT Plaintiff's Administrative Motion to Strike Defendants' Statement of Recent Decision.  Plaintiff's Complaint is DISMISSED without leave to amend.  Dismissal is without prejudice for Plaintiff to re-file his claims against Defendants in the Cook Islands.  A separate judgment will enter, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: March 29, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 22-cv-01813-EJD
ORDER GRANTING DEFTS.' MOTIONS TO DISMISS
19